**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 10-41291-MSH |
| CHRISTOPHER CARLSON and | ) | |
| CHRISTINE CARLSON | ) | |
| Debtors | ) | |
| | ) | |
| CHRISTOPHER CARLSON and | ) | |
| CHRISTINE CARLSON | ) | |
| | ) | Adversary Proceeding |
| Plaintiffs | ) | No. 11-4005 |
| v. | ) | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE,[1] MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and PNC BANK, NATIONAL ASSOCIATION | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION ON MOTION TO DISMISS AND**
**MOTION FOR RELIEF FROM STAY**

Before me are the motion of Wells Fargo Bank, National Association, as Trustee for the holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-Through Certificates, Series 2006-FF15 ("Wells Fargo") for relief from the automatic stay, which was filed in the main Chapter 13 case and the motion of Wells Fargo and Mortgage Electronic Registration Systems, Inc. ("MERS") to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6),

---

[1] for the holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-Through Certificates, Series 2006-FF15.

1

made applicable to this proceeding by Fed. R. Bankr. P. 7012.   The debtors, who are the plaintiffs in the adversary proceeding, oppose both motions.

## Background

On August 7, 2006, the debtors entered into two mortgage loans on their home at 132 Center Street, Ashburnham, Massachusetts.   In connection with the first loan (the "First Mortgage Loan"), the debtors executed an Adjustable Rate Note (the "First Mortgage Note") in the amount of $240,000 on which the lender was listed as "FIRST FRANKLIN, A DIVISION OF NAT. CITY BANK OF IN" ("First Franklin").   The debtors' obligation under the First Mortgage Note was secured by a mortgage (the "First Mortgage"), to MERS, acting solely as nominee for First Franklin and First Franklin's successors and assigns.   The settlement statement attached as an exhibit to the debtors' complaint indicates that Equity Solutions, Inc. brokered the First Mortgage Loan transaction on behalf of First Franklin.   First Franklin's address was listed on the First Mortgage as 2150 North First Street, San Jose, California 95131.   On July 23, 2009, Bill Koch, an assistant secretary of "Mortgage Electronic Registration Systems, Inc. as nominee for First Franklin," executed a Corporate Assignment of Mortgage (the "First Mortgage Assignment") which purported to assign the First Mortgage to Wells Fargo.   Shirley Tuitupou, a Utah notary public, took Mr. Koch's acknowledgment.   The First Mortgage Assignment identified 3815 SW Temple, Salt Lake City, Utah 84115 as the address for both the assignor and assignee.   In the First Mortgage Assignment, Mr. Koch "affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage."

In connection with the second mortgage loan (the "Second Mortgage Loan"), the debtors executed a Fixed Rate Note and Security Agreement (the "Second Mortgage Note") in the amount of $60,000 with First Franklin as the lender, and secured their obligation with another mortgage to

2

MERS (the "Second Mortgage"), solely as nominee for First Franklin and First Franklin's successors and assigns. On May 12, 2010, Andrew Harmon, an assistant secretary and vice president of MERS, executed an Assignment of Mortgage (the "Second Mortgage Assignment") which purported to assign the Second Mortgage to First Franklin Financial Corp.

At some point, both the First Mortgage Note and the Second Mortgage Note were endorsed by First Franklin to First Franklin Financial Corporation, and were then endorsed in blank by First Franklin Financial Corporation. The debtors note that no documentary evidence exists in the record of this case that establishes whether any of the defendants has possession of either promissory note. In their memorandum of law in support of their motion to dismiss, Wells Fargo and MERS claim that it is undisputed that Wells Fargo has possession of the note.

After falling behind on their loan payments, the debtors received a Home Affordable Modification Agreement (the "Modification Agreement") with respect to their First Mortgage Loan, which they executed on February 7, 2010. A date stamp on the first page of the Modification Agreement indicates that it was received by Select Portfolio Servicing, Inc. the servicer of the plaintiff's First Mortgage Loan, on February 10, 2010. According to the Modification Agreement, the principal balance on the modified loan was increased to $262,548.90 and the interest rate on the First Mortgage Loan was decreased to 2.125% for the 27-year term of the modified loan. The Modification Agreement also provides

> [t]hat all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

Wells Fargo Motion to Dismiss, Ex. 1, § 4(F).

On March 22, 2011, the debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. On May 18, 2010, Home Loan Services, Inc. filed a proof of claim in its capacity as servicer for First Franklin Financial Corp, in which it claims that First Franklin Financial Corp. is the successor to First Franklin with respect to the debtors' Second Mortgage Loan. On June 8, 2010, Wells Fargo filed a proof of claim with respect to the debtors' First Mortgage Loan. On December 2, 2010, Wells Fargo filed its motion for relief from the automatic stay provisions of § 362 of the Bankruptcy Code seeking stay relief in order to foreclose the First Mortgage. The debtors filed their complaint commencing this adversary proceeding on January 11, 2011. In their complaint, they allege the right to rescind their First Mortgage Loan in accordance with the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D (the "MCCCDA"), which provides for rescission of a mortgage loan when the lender fails to properly disclose the loan's costs (Count I), that rescission entitles them to a determination that the First Mortgage is invalid (Count II), that the Modification Agreement may be rescinded because the Modification Agreement was entered into in violation of the MCCCDA (Count III), that flaws in the First Mortgage Assignment render the First Mortgage unenforceable by Wells Fargo so their debt should be treated as unsecured (Count IV) and that their indebtedness to Home Loan Services, Inc. with respect to the Second Mortgage Loan should be treated as unsecured because the Second Mortgage Assignment was invalid (Count V).

After the complaint was filed, I consolidated Wells Fargo's motion for relief from stay with the adversary proceeding. Wells Fargo and MERS jointly filed a motion to dismiss Counts I through IV of the complaint, and PNC Bank, National Association, First Franklin Financial Corp. and BAC Home Loans Servicing, L.P., as successor to Home Loan Servicing, Inc. (collectively,

4

the "PNC Defendants") jointly filed a motion to dismiss with respect to Count V.[2]  After a hearing on the motion of Wells Fargo and MERS to dismiss I took the motion and Wells Fargo's motion for relief from stay under advisement.[3]

**Legal Standard**

In order to have standing to file a motion to lift the stay in the bankruptcy court a movant must be a party in interest.  *In re Maisel*, 378 B.R. 19, 2 (Bankr. D. Mass. 2007).  A mortgagee armed with the power of sale is a party in interest by virtue of having a substantive right to enforce the instrument.  *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011).  Further, the United States Court of Appeals for the First Circuit has ruled that in determining whether a creditor has standing to seek relief from the automatic stay, a bankruptcy court need not fully adjudicate the merits of the creditor's claims but rather determine "whether a creditor has a colorable claim to property of the estate."  *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994).  Thus if Wells Fargo can demonstrate that is the holder of the mortgage on the debtors' property with the statutory power of sale provided by Mass. Gen. Laws ch. 183, § 21, and that it has the right to exercise that power in accordance with Mass. Gen. Laws ch. 244, § 14, then it is has a colorable claim to estate property and has standing to seek relief from stay.

In deciding a motion to dismiss under Rule 12(b)(6), a court must review the complaint to determine if the complaint contains sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.  *Bell Atlantic v. Twombley*, 550 U.S. 544, 570 (2007); *Rederford v. U.S.*

---

[2] The name BAC Home Loans Servicing, L.P. was misspelled as "BAC Home Loan Servicing, LLP" in the motion to dismiss.

[3] On June 22, 2011, the plaintiffs filed a motion to continue the hearing on the PNC Defendants' motion to dismiss because the parties had reached a settlement in principal with respect to Count V of the Complaint.  The settlement agreement has not yet been filed with the court.

5

*Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009). A court must accept as true the factual allegations of the complaint but not the legal conclusions, even if couched as facts. *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1947 (2009). Recitations of the elements of a cause of action supported only by legal conclusions are insufficient to withstand a motion to dismiss. *Id*.

## Discussion

Counts I and II - Alleged MCCCDA Disclosure Violation at Loan Origination

The MCCCDA provides that the borrower in certain consumer loan transactions may rescind the loan until midnight of the third business day after receiving certain disclosure forms. If however, the disclosures are understated to a degree that exceeds the statutorily-established tolerance for error, then the rescission period extends until three days after a compliant disclosure form is eventually provided to the borrower, up to a period not to exceed four years after the closing of the loan transaction. *In re Bettano*, 440 B.R. 13, 15 (Bankr. D. Mass. 2010). In the present case, the debtors allege that First Franklin's disclosure of the statutorily-defined "finance charge" was $86.86 less than the actual finance charge, and that this inaccurate disclosure permits the debtors' to rescind the loan. Thus I must determine, after accepting all well-pleaded facts as true, whether this incorrect disclosure would permit the debtors to rescind the First Mortgage Loan.

*Bettano* dealt with the MCCCDA's provisions for an extended right to rescind a loan in which an incorrect finance charge disclosure had allegedly been made. *Id.* The MCCCDA considers a finance charge disclosure to be accurate even though it is understated as long as the variance is no more than one-half of one percent of the total loan amount, but if the borrower is facing foreclosure, the tolerance for error is fixed at a flat $35. *Id.* at 16. Notwithstanding the four year limit on rescission, a borrower may nevertheless seek to rescind a mortgage loan after

6

that time by way of recoupment in reliance on MCCCDA § 10(i)(3), which provides that "[n]othing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth." *Bettano*, 440 B.R. at 15. In *Bettano* I held that a borrower may not take advantage of the reduced $35 error threshold when asserting recoupment more than four years after the closing of the loan. *Id.* at 16.

The debtors urge me to reconsider my holding in *Bettano* and to find that they may rescind their loan by means of recoupment well after four years from when the loan was consummated. They fail, however, to present any new fact, change in the law or any persuasive argument which would justify my departing from the clear directives of the MCCCDA to achieve the result they seek.

Because the debtors filed this adversary complaint more than four years after the consummation of their mortgage loans they are not entitled to the benefit of the $35 threshold for error provided in MCCCDA § 10(f). Since as alleged by the debtors, First Franklin's disclosure of the costs and fees of the First Mortgage Loan transaction was understated by $86.86 which is less than one half of one percent of the total loan amount of $240,000, the debtors are not entitled to rescind the transaction and thus have failed to state a claim under Count I of their complaint for rescission of the First Mortgage Loan or under Count II for the invalidity of the First Mortgage.

Count III– Alleged MCCCDA Disclosure Violation at Loan Modification

In Count III, the debtors allege they are entitled to rescind their First Mortgage Loan, as modified, because the Modification Agreement should be deemed a refinancing of the First Mortgage Loan and Wells Fargo failed to make the disclosures required by the MCCCDA in connection with a refinancing transaction. The regulations promulgated under the MCCCDA require that when a mortgage loan is refinanced, the borrower must receive all of the disclosures

7

that are required to be given with respect to a newly-originated loan. 209 Mass. Code. Regs. § 32.20. Thus I must determine whether a loan modification constitutes a refinancing transaction within the meaning of 209 Mass. Code Regs. § 32.20.

The relevant MCCCDA regulation provides that a refinancing occurs when "an existing obligation that was subject to 209 CMR 32.00 is satisfied and replaced by a new obligation undertaken by the same consumer." The regulation lists a series of transactions that are not treated as refinancings:

> (1) Refinancings. A refinancing occurs when an existing obligation that was subject to 209 CMR 32.00 is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation. The following shall not be treated as a refinancing:
>
> > (a) A renewal of a single payment obligation with no change in the original terms.
> >
> > (b) A reduction in the annual percentage rate with a corresponding change in the payment schedule.
> >
> > (c) An agreement involving a court proceeding.
> >
> > (d) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in 209 CMR 32.04(4).

209 Mass. Code Regs. § 32.20(1).

Helpful guidance on whether a loan modification is a refinancing is provided by the federal Truth in Lending Act, 15 U.S.C. §§ 1601–1667e ("TILA"), and the regulations promulgated thereunder by the Federal Reserve, 12. C.F.R. Pt. 226. Courts may interpret the MCCCDA through the lens of TILA upon which it is largely based. *Hart v. GMAC Mortgage Corp. (In re*

8

*Hart)*, 246 B.R. 709, 738 (Bankr. D. Mass. 2000). As 209 Mass. Code Regs. § 32.20 is virtually identical to its federal counterpart, 12 C.F.R. § 226.20, the Official Commentary to § 226.20 is instructive. It provides:

> 1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to **whether the original obligation has been satisfied or extinguished and replaced by a new obligation**, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, **the new obligation must completely replace the prior one**. . . .
>
> Changes in the terms of an existing obligation, such as the deferral of individual installments, **will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation**. . . .
>
> 2. Exceptions. A transaction is subject to § 226.20(a) **only if it meets the general definition of a refinancing**. Section 226.20(a)(1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

12 C.F.R. Pt. 226, Supp. I (emphasis added).

The language of 209 Mass. Code Regs. § 32.20 that a refinancing occurs when an existing obligation is satisfied and replaced by a new obligation is fully consistent with the Official Commentary to its federal analog. As the Modification Agreement itself provides that it is not to be considered a satisfaction or release of any of the debtors' obligations under the First Mortgage Loan, the Modification Agreement did not effect a refinancing within the meaning of the MCCCDA, so that no additional disclosures were required. The debtors have therefore failed to state a claim for rescission of the Modification Agreement pursuant to the MCCCDA under Count III of their complaint.

9

Count IV – Validity of Security Interest

In Count IV of the complaint, the debtors seek a determination that the First Mortgage is invalid due to flaws in the assignments of the First Mortgage Note and First Mortgage.

First, the debtors point out several discrepancies between the First Mortgage and the First Mortgage Assignment which they claim render the assignment invalid.   As discussed above, the First Mortgage identifies the mortgagee as MERS as nominee for "FIRST FRANKLIN, A DIVISION OF NAT. CITY BANK OF IN," while the assignor listed in the First Mortgage Assignment is MERS as nominee for "FIRST FRANKLIN."   The two documents also list completely different addresses for First Franklin,[4] and the First Mortgage Assignment lists the same address for both the assignor and assignee.   The First Mortgage Assignment also incorrectly states that no mortgage broker was involved in the origination of the debtors' loan in violation of Mass. Gen. Laws. ch. 183, § 6D.   The debtors argue that as a result of these discrepancies, Wells Fargo does not hold the First Mortgage and thus its claim against the bankruptcy estate is unsecured.

Despite these errors, however, the First Mortgage Assignment is statutorily sufficient to transfer the mortgage in accordance with Massachusetts law.   The instrument references the book and page numbers in the Worcester Northern District Registry of Deeds where the First Mortgage was recorded, so there is no question as to the property being transferred.   Mass. Gen. Laws. ch.

---

[4] In their memorandum of law in support of their motion to dismiss Wells Fargo and MERS explain that the address listed on the First Mortgage was that of First Franklin while the address listed on the First Mortgage Assignment was that of MERS.   This explanation appears to be incorrect.   MERS's website indicates that it is based in Reston, Virginia, *see* http://www.mersinc.org/location/index.aspx (last visited Jul. 25, 2011), and a Google search reveals that address listed on the First Mortgage Assignment is that of Select Portfolio Servicing, the servicer of the debtors' First Mortgage Loan.   *See* http://goo.gl/SB2KW (last visited Jul. 25, 2011)**.**

183, § 6C provides that an assignment of a mortgage must contain the business address of the "mortgagee or assignee" but makes no reference to the address of the assignor. Furthermore, the statute provides that an assignment is valid in the absence of any addresses at all.[5] Similarly, § 6D provides that while the assignment of a mortgage in which a mortgage broker was involved must include the contact information of the mortgage broker, if this information is not included the assignment is nevertheless valid. I find, therefore, that the discrepancies cited by the debtors do not render the First Mortgage Assignment invalid.

The debtors also argue that the First Mortgage Assignment is invalid because there is no evidence that MERS, in its capacity as nominee, had the authority to execute the assignment. The issue of assignments from MERS was discussed extensively in my recent decision in *In re Marron*, 2011 WL 2600543, at *4-5 (Bankr. D. Mass. June 29, 2011), in which I held that an assignment from MERS that was executed before a notary public by a person purporting to be an officer of MERS was valid and enforceable against MERS in accordance with Mass. Gen. Laws ch. 183, § 54B. As this is precisely how the assignment was executed in this case, I find MERS validly assigned the mortgage to Wells Fargo.

---

[5] Mass. Gen. Laws. ch. 183, § 6C provides that

> [e]very mortgage and assignment of a mortgage presented for record shall contain or have endorsed upon it the residence and post office address of the mortgagee or assignee if said mortgagee or assignee is a natural person, or a business address, mail address or post office address of the mortgagee or assignee if the mortgagee or assignee is not a natural person. Such endorsement shall be recorded as part of the mortgage or assignment of a mortgage. Failure to comply with this section shall not affect the validity of any mortgage or assignment of a mortgage or the recording thereof. No register of deeds shall accept a mortgage or assignment of a mortgage for recording unless it is in compliance with the requirements of this section.

11

Because Wells Fargo is the mortgagee under the First Mortgage, it has standing to seek relief from the automatic stay to foreclose that mortgage even if it is not the holder of the First Mortgage Note. *Marron*, 2011 WL 2600543, at *5, 7 (finding that if a mortgagee forecloses a mortgage when it is not the holder of the related promissory note, it does so "as a fiduciary for the note holder, to whom it must account for the foreclosure sale proceeds.").

Lastly, the debtors argue that Wells Fargo has not proven that it is entitled to enforce the First Mortgage Note thus presumably it may not enforce the First Mortgage. The debtors point out that the copy of the First Mortgage Note attached to Wells Fargo's proof of claim filed in their Chapter 13 case was endorsed in blank and that Mass. Gen. Laws. ch. 106, § 3-205(b) provides that when a negotiable instrument such as a promissory note is endorsed in blank, the party with physical possession of the instrument becomes its holder and is entitled to enforce it. The debtors assert that Wells Fargo has produced no evidence that it has possession of the note, and thus failed to establish the right to enforce it.

While evidence that Wells Fargo possesses the First Mortgage Note might be relevant were the defendants seeking to invalidate Wells Fargo's claim, they are merely seeking to have Wells Fargo's claim deemed unsecured. The issues before me are whether the First Mortgage instrument is valid and whether Wells Fargo has standing to seek relief from the automatic stay to foreclose the First Mortgage. As discussed at length in *Marron*, 2011 WL 2600543, at *5, the holder of a mortgage on real estate in Massachusetts may foreclose the mortgage even if it is not entitled to enforce the related promissory note. When this occurs, the mortgagee forecloses "as a fiduciary for the note holder, to whom it must account for the foreclosure sale proceeds." *Id.* As Wells Fargo is the mortgagee, it may foreclose and it has standing to seek relief from the automatic

12

stay.   The question of whether Wells Fargo is entitled to enforce the First Mortgage Note is immaterial.   The debtors have therefore failed to state a claim for invalidation of Wells Fargo's security interest under Count IV of their complaint.

## Conclusion

In light of the foregoing, I will allow Wells Fargo's motion for relief from the automatic stay and allow the motion of Wells Fargo and MERS to dismiss Counts I through IV of the complaint.   Separate orders shall issue.

Dated: August 2, 2011　　　　　　　　　　　　　　　　　　　　　　　　By the Court,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Melvin S. Hoffman
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Bankruptcy Judge

Counsel Appearing:   Laird J. Heal
　　　　　　　　　　Worcester, MA
　　　　　　　　　　for the debtors

　　　　　　　　　　Megan Manzo
　　　　　　　　　　Ablitt Scofield, P.C.
　　　　　　　　　　Worburn, MA

　　　　　　　　　　and

　　　　　　　　　　Peter F. Carr, II
　　　　　　　　　　Eckert Seamans Cherin & Mellott, LLC
　　　　　　　　　　Boston, MA
　　　　　　　　　　for Wells Fargo and MERS